OPINION
Plaintiffs-appellants Kevin and Lisa Swisher appeal the December 23, 1998, jury verdict and Judgment Entry in favor of defendants-appellees in the Stark County Court of Common Pleas. Defendants-appellees are Rick Scherpenisse, individually and as agent and owner of Pioneer Basement Waterproofing.
 STATEMENT OF THE FACTS AND CASE
On April 10, 1997, appellants filed a complaint against appellees alleging breach of contract, negligence, breach of express or implied warranty, breach of duty of good faith and fair dealing and violations of the Consumer Sales Practices Act [hereinafter CSPA]. The action arose out of a waterproofing job performed by Pioneer Basement Waterproofing at a cost of $3,535.00. Appellee Rich Scherpenisse is the owner of Pioneer Basement Waterproofing. The matter was submitted to non-binding arbitration. The arbitrator found in favor of appellants in the amount of $9,115.00 in an arbitration award and report filed February 10, 1998. On February 23, 1998, appellants appealed the arbitration award. A trial was commenced on December 17, 1998. The following facts were elicited: In 1983, the appellants purchased a home located at 2443 South Linden Avenue in Alliance, Ohio. The home was built in 1922 and has clay tile blockwalls. Appellant's basement was damp from the time the house was purchased by appellants. In fact, testimony showed that from 1983 through 1996, appellants experienced trickles of water running down the walls during heavy rains. Appellants contracted with Pioneer Basement Waterproofing to waterproof their basement. The system used to waterproof is designed to relieve static-pressure from water gathering around a foundation. To relieve this pressure, a cavity is created by removing a twelve inch section of concrete around the perimeter of the basement floor. The concrete is removed by use of an electric jackhammer that has an asphalt chisel bit. The jackhammer is used to insure a straight line and clean cut on the concrete. A trench is dug into the dirt and a perforated pipe is installed and connected to a sump pump. Subsequently, holes are drilled in the clay tile block walls of the basement to allow water to come out through the cells. A concrete cap is then poured over the subsurface trench and floated even with the existing concrete floor. Xinite plastic paneling is then put up before the concrete dries so that the bottom two to three inches are cemented, allowing water that drips through the weep holes to go down into the perforated pipe behind the paneling, outside the view of the homeowner. Appellee never told appellant, Lisa Swisher, that the above described system would make the walls more or less stable. When the initial estimate was done, it was not possible to see all of the south wall of the basement because it was covered with paneling. As Pioneer Basement Waterproofing began to do the waterproofing job, the full south wall was seen for the first time. It was discovered that the south wall had a large vertical crack. Although denied by appellant Lisa Swisher, Randy Moore, of Pioneer Basement Waterproofing, testified that he suggested to appellant, Lisa Swisher, that "I-beams" be added or the wall be replaced due to the potential for future problems. According to Mr. Moore, appellant, Lisa Swisher, declined a written estimate for either beaming or replacing the wall, so no written proposal was given. Once the work was underway, the concrete was removed by jack hammer and the next day, the cement cap was poured, sealing the perforated pipe, and xinite paneling was put into place. The existing concrete floor was evaluated by Randy Moore, an employee of Pioneer Basement Waterproofing and found to be between 1 inch to 1 1/2 inch or, at the most, 2 inches thick in places. Two months after appellees completed the work, after a heavy storm, the south wall of appellants' basement moved inwardly approximately three inches. That night, appellants called their homeowners insurer and appellee, Pioneer Basement Waterproofing. Six to seven days later, engineer Lorey Caldwell inspected appellants' residence at the request of appellant's insurer. Mr. Caldwell never saw the basement before the waterproofing job. Mr. Caldwell found the south wall to have been deteriorated, cracked and weakened over time from water penetrating into the porous glazed tile of the basement. In his opinion, the physical act of removing the twelve inch perimeter of the basement floor removed the lateral support provided by the floor and allowed the south wall to move inward two months later. He believed that the physical act of removing the floor by jackhammer caused damage when it broke and removed pieces of the bottom course of clay tile. David Starcher, a contractor and competitor of Pioneer Basement Waterproofing, visited appellant's home after the south wall moved and observed holes in the bottom of the block. He acknowledged that the standard method of removing a basement perimeter and installing a water proof system would require the use of a jackhammer. He testified that the holes or cracks he observed in the lower course of block appeared to have been made by a jackhammer. However, he stated that he had seen previous situations where glazed tile would deteriorate and crack in the absence of a jackhammer. He noted, however, that he had not seen the south wall prior to the waterproofing job. Appellee presented testimony of a professional engineer, Stanley Kolinger. Mr. Kolinger testified that clay tile breaks down, deteriorates and ultimately crumbles when exposed to long term standing water. He testified that he was not aware of any non-destructive test that could have been performed to determine whether appellants' foundation had the ability to withstand the vibration of the jackhammers, prior to the installation of the waterproofing system. In Mr. Kolinger's opinion, the wet basement ultimately deteriorated the mortar joints and the tile, causing the bottom course of block on the south wall to break free and slide inward over the basement floor inasmuch as the basement floor provided no lateral support. He further testified that since appellants' floor measured at 1/2 inch to 2 inches thick before the waterproofing began, it did not provide lateral support to the wall sufficient to keep the wall from sliding. Mr. Kolinger testified that if appellee's temporary removal of the floor was the cause of the movement of the south wall, the wall would have moved immediately and not two months later. Ultimately, Mr. Kolinger testified to a reasonable degree of engineering certainty that the removal of the floor perimeter by Pioneer Basement Waterproofing was not the cause of the movement of the south wall of the basement. As to the other three walls, Mr. Kolinger testified that the work performed by Pioneer Basement Waterproofing did not negatively effect the other walls of the basement. On December 23, 1998, the jury returned a verdict in favor of appellants in the amount of $3,000.00, on a negligence theory. All other claims of appellants were rejected. Jury interrogatories reflected that the jury found that appellees did not fail to perform the home improvements which the appellants contracted for in a workmanlike manner, that appellees' guarantee applied to the claims for damages asserted by appellants, that the appellees represented that the guarantee which they sold to appellants would cover claims for damages asserted by appellants and that appellees later refused to honor their prior representation. The jury did not find that appellants proved by a preponderance of the evidence that appellees knowingly misrepresented the coverage of the guarantee. The jury further found that the appellants failed to prove by a preponderance of the evidence that there were unconscionable, unfair or deceptive acts or practices performed in connection with home repairs performed by the appellee. A Judgment Entry was filed that same day. It is from the December 23, 1998, jury verdict, answers to interrogatories and Judgment Entry that appellants appeal, raising the following assignment of error:
 THE VERDICT OF A JURY SHOULD BE CLEAR, CONSISTENT, CERTAIN AND INTELLIGIBLE. ITS MEANING SHOULD BE DEFINITE AND FREE FROM AMBIGUITY. A VERDICT THAT IS VOID FOR UNCERTAINTY SHOULD BE SET ASIDE OR REFUSED BY THE COURT, OTHERWISE JUDGMENT ENTERED THEREON SHALL BE REVERSED. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT SETTING ASIDE OR REFUSING THE JURY'S INCONSISTENT VERDICT IN THIS CASE.
 I
In their only assignment of error, appellants argue that the trial court committed reversible error by not setting aside or refusing the jury's verdict in this case as an inconsistent verdict. Appellees respond that appellants failed to object to the verdict and interrogatories and thereby waived any claim that the verdict and interrogatories were defective in form and substance, including any inconsistencies, by virtue of the failure to object. Further, appellee points to the lack of a complete transcript in this case and contends that appellants failed in their duty to present this court with portions of the transcript necessary to determine this matter. We agree. Appellants have the burden of establishing that the alleged assignment of error was preserved at trial by way of an objection to the alleged inconsistency between verdict and interrogatories. "An objection to an inconsistent answer by a jury to an interrogatory is waived unless the party raises the objection prior to the jury's discharge." Avondet v. Blankstein (1997), 118 Ohio App.3d 357, 368, 692 N.E.2d 1063; Staff Builder's, Inc. v. Armstrong, et al., (Dec. 8, 1986), Stark App. No. CA-6855, unreported, 1986 WL 14687, affirmed in part, reversed in part 37 Ohio St.3d 298, 525 N.E.2d 783. (In reversing, the Ohio Supreme Court found there was no inconsistency and did not address the failure to object.) "The policy reasons behind requiring an objection are `(1) to promote the efficiency of trials by permitting the reconciliation of inconsistencies without the need for a new presentation of evidence to a different trier of fact, and (2) to prevent jury shopping by litigants who might wait to object to an inconsistency until after the original jury is discharged.'" Avondet, page 368 citing Greynolds v. Kurman (1993), 91 Ohio App.3d 389, 395, 632 N.E.2d at 950. Likewise, Civ.R. 48 provides that a jury may be polled and if the verdict in substance is defective, the jury is to be sent out again for further deliberation. Civil Rule 49(B) states that when answers to interrogatories are inconsistent with the general verdict, a court may enter a verdict consistent with the answers, notwithstanding the general verdict or return the jury for further deliberations or order a new trial. However, from the record before us, we are unable to determine if appellant objected to the interrogatory or jury verdict prior to the jury's discharge because appellant has failed to present the relevant portion of the transcript of proceedings. Appellate Rule 9 places the obligation to provide the record of the trial court proceedings to the appellate court on the appellant. Appellants are to order a complete transcript of the proceedings or, if only a partial transcript is requested, appellants must serve appellees with a description of the parts of the transcript that appellants intend to include in the record. App. R. 9(B). This affords the appellee the opportunity to request that additional portions of the transcript be prepared, should the appellee deem it to be necessary. Id. Appellate Rule 10(A) provides "that [t]he record on appeal, including the transcript and exhibits necessary for the determination of the appeal, shall be transmitted to the clerk of the Court of appeals . . ." "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199, 400 N.E.2d 384. In this case, even though the Praecipe for Transcript and Docketing Statement filed by appellants indicate that a full transcript was requested, the record reflects that only a partial transcript was filed. Further, no notice was provided to appellees informing appellees of the filing of a partial transcript, as required by App. R. 9(B). The partial transcript, as provided to this court by appellants, does not contain the portion of the transcript which would reflect whether appellants objected to the verdict and to the alleged inconsistencies with the interrogatories or whether appellants requested that the jury be polled. We find that the portion of the transcript necessary to determine this issue was omitted from the record. The appellant has not met his burden of establishing that this assignment of error was preserved by objection at trial prior to the jury's discharge because appellant did not transmit to us the relevant portions of the trial transcript. Therefore, pursuant to Knapp, supra, we must affirm the jury's verdict. Even if we were to consider the issue on its merits, we cannot conclude that the verdict was inconsistent with the interrogatories. Appellants bear the burden to demonstrate that the answers to the interrogatories, considered as a whole, are inconsistent with the general verdict. Bauman v. Schmitter (1989), 54 Ohio App.3d 51,53, 560, N.E.2d 827. Appellants, in their brief, speculate as to which acts of appellees constituted negligence in the juror's minds. There was no interrogatory that asked the jury to specify what act or acts of the appellee constituted negligence. There was conflicting testimony as to the cause of the damage to the basement walls, particularly the south wall, and the cause of the movement of the walls. It requires speculation to determine what act of appellees formed the basis of the negligence finding. It was conceivable for the jury to find that the appellee performed the job of waterproofing appellant's basement in a workmanlike manner and that appellee also committed some act of negligence while in appellant's basement that did not effect the waterproofing job. Appellants have not met their burden to demonstrate the interrogatory answers were inconsistent with the general verdict.
Appellants' assignment of error is hereby overruled.
The Judgment of the Stark County Court of Common Pleas is affirmed.
By EDWARDS, J. WISE, P.J. and HOFFMAN, J. concurs